**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

IN RE

JOSEPH DALE CAUDILL                                                    CASE NO. 18-70102
KALA DANIELLE CAUDILL

DEBTORS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion Setting Property Value filed by Debtors Joseph Dale Caudill and Kala Danielle Caudill [ECF No. 25], filed in response to Creditor 21st Mortgage Corporation's Objection to Confirmation [ECF No. 21]. The Court held a valuation hearing at which Debtors and experts on behalf of Debtors and Creditor testified regarding the value of Debtors' personal property, a manufactured home located at 176 Honeycutt Lane, Pine Top, Kentucky (the "Property"). Prior to the hearing, both experts submitted their direct testimony via affidavits that attached appraisal reports, which were deemed admitted without objection.[1] All witnesses were subject to cross-examination. Although both experts offered opinions of value using the well-recognized NADA cost approach, they reached different values owing to a few differences of opinion. The Court having heard the testimony and reviewed the admitted affidavits and their attachments, and being duly and sufficiently advised, issues the following findings and conclusions.

As an initial matter, the Court notes that Debtors carry the burden in connection with the valuation process here. As the Court previously has explained:

> A debtor seeking confirmation of a chapter 13 plan has the burden to satisfy certain requirements under § 1325, including that the debtor must pay secured creditors the present value of the creditors' secured claims under the plan. 11

---

[1] Debtors also filed affidavits setting forth their direct testimony, which affidavits (with attachments) were admitted without objection.

> U.S.C. § 1325(a)(5)(B)(ii).  Section 506 establishes the standards used to determine that value.  11 U.S.C. § 506.

*In re Neace*, Case No. 16-60861, 2017 Bankr. LEXIS 42, at *2 (Bankr. E.D. Ky. Jan. 6, 2017). In other words, as the proponents of their chapter 13 plan seeking to "cram down" Creditor's secured claim here, Debtors bear the burden of proof on the issue of valuation under § 506(a). *See*, *e.g.*, *In re Wcislak*, 417 B.R. 24, 28 (Bankr. N.D. Ohio 2009) (citing *Sovereign Bank, F.S.B. v. Finnegan (In re Finnegan)*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006)).

A primary difference between the experts' opinions stemmed from the year each used to determine the age of the home.  This distinction is important insofar as the NADA cost approach takes age into consideration both in the context of reaching a base price for a manufactured home, as well as when determining the value of its components and accessories. Stated differently, a property valued as a 2013 manufactured home has original components and accessories that fall in a NADA valuation category of 5+ years old, whereas a 2014 manufactured home's original components and accessories fall in the higher-value category of 3-4 years old.

Debtors' expert, William T. Cunningham, issued an appraisal report that purports to value a 2013 Platinum Limited Edition manufactured home from American Homestar Corp. Mr. Cunningham testified that a manufactured home may be built prior to the year commonly used as its model year, and stated that he used 2013 in his report because he found a data plate under a sink at the Property that lists a June 16, 2013 date of manufacture.[2]  Yet, Mr. Cunningham attached to his report a Certificate of Title for the Property issued by the Commonwealth of Kentucky Transportation Cabinet dated April 1, 2014, which indicates that

---

[2] Mr. Cunningham did not explain why he perceived that the "data plate" related to the manufactured home and not the sink itself.

the Property is a 2014 model. [ECF No. 39-1 at 33.] Mr. Cunningham also provided a 2018 property assessment report from the Knott County PVA in Hindman, Kentucky, which identifies the Property as having a "year built" of 2014. [*Id*. at 34.] And, Mr. Cunningham's own affidavit states: "On or about March 26, 2018, I appraised a 2014 singlewide mobile home located at 176 Honeycutt Lane, Pine Top, Kentucky." [ECF No. 39 ¶4.]

Creditor's expert, Robert Keck, submitted an appraisal report for a 2014 American Homestar Corp. Platinum Limited Edition manufactured home. Mr. Keck testified that he used 2014 as the appropriate year in his report for valuation purposes to be consistent with the date on the Property's title. Mr. Keck also testified that he spoke with the manufacturer, which explained that it operates on a fiscal year, such that it may build mobile homes in one year with the next year as the model year. Debtors did not object to this testimony as hearsay. Nevertheless, an expert may rely upon otherwise inadmissible hearsay evidence in certain circumstances. FED. R. EVID. 703. In fact, Debtors' expert, Mr. Cunningham, testified that he also called the manufacturer in the context of working on his appraisal in this case. The Court finds that Mr. Keck's reliance upon information that he reportedly received from the Property's manufacturer as one basis for forming his own expert opinion in this matter was proper. *See*, *e.g.*, *Engebretsen v. Fairchild Aircrat Corp.*, 21 F.3d 721, 728-29 (6th Cir. 1994) ("'Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion.'" (citation omitted)).

Given the testimony and the evidence presented, the Court finds that Debtors have not carried their burden to establish that the appropriate year used to calculate the age of the

Property is 2013 instead of 2014.[3]  The Court finds credible Mr. Keck's opinion that 2014 is the appropriate year to use for valuation purposes.

For similar reasons, the Court accepts Mr. Keck's opinion as to the dimensions of the Property for purposes of finding the appropriate value under § 506(a).  While Mr. Cunningham used varying dimensions for the Property in his appraisal report (compare ECF No. 39-1 at pp. 2, 5, 8, 32 (15' x 76') with p. 6 (15' x 73')), Mr. Keck used dimensions of 16' x 76' throughout his report.  Mr. Keck's dimensions are consistent with the dimensions of the manufactured home that Debtors each represented in their affidavits to be identical to the Property.

An additional significant difference of opinion for the experts concerned whether it is appropriate to apply only an upward location adjustment multiple of 1.02 to the base value of the Property, which value is Kentucky-specific (as Mr. Keck advocates), or, instead, to apply an additional downward location adjustment of 14% (resulting in a total net adjustment multiple to base value of .88) because the Property is situated in a rural locality in eastern Kentucky (as Mr. Cunningham suggests).  Mr. Cunningham acknowledged in his report and in his live testimony that similar manufactured homes located in Kentucky generally are subject to a 1.02 location adjustment multiple under the NADA cost approach, but he opined that a further downward adjustment had to apply as well because the Property is located in an "economically depressed" area of the Commonwealth.  On cross-examination, however, Mr. Cunningham conceded that, under the NADA valuation approach, the community location adjustment form that he used to calculate this downward variance is intended to apply only to homes located on a retailer's lot or in a mobile home community.  Debtors' home, however, is located on a lot owned by Mr.

---

[3] Mr. Cunningham's use of 2013 as the year of manufacture also conflicts with Debtors' testimony in their respective affidavits that they each found "the exact home as my own" being sold on Creditor's website; they attached to their affidavits what they represented to be print-outs from that website relating to a 2014 Platinum manufactured home. [ECF Nos. 45, 46.]

Caudill's mother. Further, Mr. Cunningham's opinion (and Debtors' counsel's argument) that it is well-known that far-eastern Kentucky is economically depressed was not supported by any evidence linking that premise to the manufactured home market. Accordingly, the Court finds that Mr. Cunningham inappropriately applied a downward location adjustment multiple to the Property's base value, and does not accept his opinion on this issue for purposes of determining the Property's value.

Having resolved these differences of opinion, the Court considers the remaining factors used to determine value under the NADA cost approach. As the Sixth Circuit Bankruptcy Appellate Panel has explained, the Court is not bound to accept the values in either side's appraisal, but may reach its own opinion of the Property's value based upon the evidence presented. *In re Creekside Sr. Apts., LP*, 477 B.R. 40, 61 (B.AP. 6th Cir. 2012). In light of Debtors' testimony, as well as that of the parties' experts, concerning the Property's condition, the Court finds that applying a condition adjustment of .98 to the total guide book retail value of the Property is appropriate. The Court accepts the cost of repairs advanced by Mr. Cunningham (whose testimony the Court found credible on this issue), and further finds it proper to make certain additional adjustments to value with respect to the Property's accessories, components, and lack of running gear.

Taking all of these adjustments to value into account, and in light of all of the evidence presented to the Court in connection with the valuation hearing, it is hereby ORDERED that the value of the Property is $49,600 for purposes of § 506(a)(2).

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Wednesday, July 25, 2018
(tnw)